UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LIESL D. HOOVER | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | |
| FREEDOMROADS, LLC D/B/A CAMPING WORLD ALVARADO | § § § § § | Civil Action No.: _____ |
| *Defendant.* | § § § | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT.

Plaintiff, Liesl D. Hoover ("Hoover" or "Plaintiff"), by counsel, brings this action against Defendant, FreedomRoads, LLC d/b/a Camping World Alvarado ("FreedomRoads" or "Defendant"). For causes of action Plaintiff respectfully shows the Court as follows:

**I.**

**INTRODUCTION**

1.01   Plaintiff would show the Court that Defendant wrongfully demoted her from her job because Defendant wanted a man in her position.

## II.

## THE PARTIES

2.01    Plaintiff Hoover is a citizen of Texas who can be contacted in care of her undersigned counsel of record.

2.02    Defendant FreedomRoads, LLC d/b/a Camping World Alvarado is a foreign for-profit corporation with its Texas address at 5201 S. I-35 W, Alvarado, Texas, 76009.  Defendant can be served through its registered agent for service of process in Texas C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201.

## III.

## JURISDICTION AND VENUE

3.01    Pursuant to 28 U.S.C. §1331, jurisdiction is appropriate in the United States District Court for the Northern District of Texas as this action involves a question of the application of federal law, namely TITLE VII, 42 U.S.C. 2000e, et seq.

3.02    Venue for all causes of action stated herein lies in the Northern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. §1391.

## IV.

## FACTUAL ALLEGATIONS

4.01    Plaintiff was hired on at FreedomRoads, LLC d/b/a Camping World Alvarado on February 24, 2020 to be the Service Director.  Plaintiff's pay plan upon being hired was as follows:

$48,500 base salary, with a variable of 2% gross profit of entire service department + 4% of OEM (manufacturer) parts + .5% of Camping World Retail Parts. Plaintiff was told upon hire by Jay Belcher that she would make a total of approximately $114,000 - $120,000 her first year as the Service Director.

4.02    In March of 2020 Plaintiff surpassed the goal set for her by bringing in $223,000 in revenue for the Service Department . In April, the goal set for Plaintiff was $170,000.  However, Plaintiff brought in $182,000, again surpassing her goal. In May, 2020 the goal set for Plaintiff was $200,000. Plaintiff brought in $208,000 in revenue, again surpassing the set goal for that month. During the three months that Plaintiff was the Service Director Plaintiff consistently met the goals set for her and her department.  Plaintiff's department was able to achieve its goals in spite of the pandemic and losing almost half of the staff due to a reduction in workforce.

4.03    During Plaintiff's time as Service Director Plaintiff did not receive any writeups and was never counseled for any wrongdoings.  Plaintiff was only told what a great job she was doing, and to keep it up.  Plaintiff was told on multiple occasions by Jay Belcher and Juan Tejeda that she was an asset to Camping World and that Plaintiff would go far in the company.

4.04    On May 22, 2020, Plaintiff was informed by an employee at a competing RV dealership that Plaintiff was being replaced as Service Director. Plaintiff waited a couple of days to see if anyone from Camping World would talk to Plaintiff about being replaced. No one did.

4.05    Jay Belcher, the Regional Service Director called Plaintiff and asked her if she was ok. Plaintiff responded with "No, I'm not ok." Plaintiff informed him what she heard about being replaced. Belcher then proceeded to tell Plaintiff that he could not explain why she was being replaced, and that it was not set in stone as of yet.

4.06    During the week of May 25th – June 1st 2020, Plaintiff had multiple conversations with both Jay Belcher and Mike Wolfe. Plaintiff made it very clear to both of them that she did not understand why she was being replaced. Jay Belcher's only explanation was, "TJ (Tommy Smith) wants Cody Stone. I can't explain it."

4.07    On May 28th, it was confirmed that Cody Stone would be coming to Camping World to replace Plaintiff. Plaintiff was given this confirmation by employees at the competing RV dealership once again.

4.08    Plaintiff immediately called Jay Belcher and told him that she knew it was a done deal. He acted surprised and stated "How do you know this?" He then sent Plaintiff a text message and told Plaintiff that Mike Wolfe was on his way to talk to Plaintiff. There were several people in Plaintiff's office at the time.

4.09    Mike Wolfe entered Plaintiff's office, leaned over Plaintiff's office chair and stated, "So I guess you know it's a done deal?" Plaintiff stated that she did know. He then turned and left Plaintiff's office with no explanation as to why or when.

4.10    Jay Belcher called Plaintiff about an hour or so later and said that Plaintiff could choose between being a service advisor, or the Collision Manager. After a few minutes of thinking and speaking with her husband, Plaintiff called him back and said she would rather choose the Collision position. (Plaintiff was not listed as a Collision Manager. Plaintiff was listed as a Collision Advisor in ADP.) It was during that phone call that Belcher informed Plaintiff that Cody Stone's first day would be June 8, 2020. Plaintiff was devastated because she had worked so hard only to be replaced by Cody Stone.

4.11    On May 29, 2020, Plaintiff was called into a Zoom meeting at 1:00pm with Jay

Belcher, Mike Wolfe, and Adam (Colby) Ratliff. The Zoom meeting was with all of the Service Directors, General Managers, and Regional Managers. Marcus Lemonis, CEO of Camping World, stated during this meeting that he was giving every Service Director $10,000 in Camping World stock as a way of saying Thank You for working so hard during the COVID-19 pandemic.

4.12   When the meeting was over, Plaintiff asked both Jay Belcher and Mike Wolfe if she was going to receive the stock since she was no longer going to be the Service Director as of June 8, 2020. They both stated that yes, Plaintiff would get the $10,000 in stock because Plaintiff was still the Service Director at the time it was given. Plaintiff never received the stock.

4.13   On Monday, June 15, 2020 Plaintiff was called into Mike Wolfe's office. He began by telling Plaintiff that he knew that she was not happy and that he could tell she was angry. He said "Look, there's not a person here that doesn't know that what happened to you was a bad deal. What they did to you was a dick move." Plaintiff agreed with him. He then said "But you need to change your attitude. Deal with it. Get over it. I don't want you to get the reputation here of having a bad attitude." Plaintiff responded with, "Yes Sir."   It was at this moment that Plaintiff knew she could not go to Human Resources to file a complaint. Plaintiff was going to be labeled a "bad attitude."

4.14   Plaintiff worked very hard for Defendant.  Plaintiff met or exceeded her goals. Plaintiff worked 6-7 days a week in order to do her job and do it well. Plaintiff's career with Camping World was taken away from her with no explanation and to no fault of her own. It is not fair, and it is wrong. Plaintiff became depressed and suffered from insomnia, Plaintiff worried all of the time about bills.  Plaintiff had to figure out how her bills are going to get paid. As a Collision Advisor, Plaintiff's pay plan is as follows: $32,500 per year base salary, and 6% gross profit of

only work orders billed to Collision. <u>Plaintiff's pay has been decreased by approximately $81,000 per year</u>.

4.12    Plaintiff believes that there is only one reason she was replaced as the Service Director. Defendant wanted a male for the position. Plaintiff believes that she was discriminated against for simply being a female. It was not because Plaintiff wasn't doing the job that she was hired to do. Plaintiff's numbers speak for themselves. Plaintiff was dedicated, determined, and loyal to Camping World. Plaintiff's staff was provided a work environment that people enjoyed working in. Plaintiff's department hit their goals – every single month. Plaintiff worked hard and did the job she was hired to do and did it well.

## V.

## FIRST COUNT

### DISCRIMINATION BECAUSE OF SEX
### IN VIOLATION OF TITLE VII, 42 U.S.C. 2000e, *et seq.*

5.01    The foregoing paragraphs of this Complaint are incorporated in this count as fully as if set forth at length herein.

5.02    Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely females. 42 U.S.C. §2000e(f).

5.03    Defendant is an employer within the meaning of Title VII. 42 U.S.C. §2000e(b).

5.04    Defendant intentionally discriminated against Plaintiff because of her gender in violation of Title VII by creating a work environment hostile to women which subjected Plaintiff to harassment based upon her gender.

5.05   Plaintiff timely filed with the Equal Employment Opportunity Commission (EEOC) a charge of discrimination against Defendant.  Plaintiff received a notice of the right to sue from the EEOC within 90 days of the filing of this complaint which is attached hereto as **Exhibit A**.

5.06   As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following injuries and damages.

    a.   Plaintiff was demoted.  Plaintiff lost front pay and back pay.

    b.   Plaintiff suffered damages to Plaintiff's benefits.

    c.   Plaintiff suffered mental anguish and emotional distress.

5.07   Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5(k).

5.08   Defendant violated Title VII by discriminating against Plaintiff in connection with compensation, terms, conditions or privileges of employment because of Plaintiff's sex.  At Defendant, Plaintiff was subjected to a continuous course of harassment, and worked in a sexually hostile environment.

5.09   Such discrimination by Defendant against Plaintiff was intentional. Discrimination was a motivating factor in Defendant's actions.  Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other nonpecuniary losses.  Further, this discrimination was done by Defendant with malice or with reckless indifference to Plaintiff's federally protected rights.  Plaintiff is therefore also entitled to recover punitive damages.

## VI.

## SECOND COUNT

## UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C. § 2000(c) *ET SEQ*

6.01    The foregoing paragraphs in this Complaint are incorporated in this count by reference as fully as if set forth at length herein.

6.02    Pursuant to 42 USC section 2000(c) *et seq*., an employer commits an unlawful employment practice if the employer retaliates or discriminates against a person who opposes a discriminatory practice; makes or files a charge; files a complaint; or testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

6.03    Defendant retaliated and discriminated against Plaintiff after she complained to Defendant about being demoted and replaced by a man solely because she is a woman.

6.04    Following Plaintiff's complaint, Defendant unfairly criticized Plaintiff.

6.05.   Defendant knowingly and willfully retaliated against Plaintiff for her protected activity in violation of Title VII.

6.06    Defendant's conduct was malicious and/or taken with reckless disregard for Plaintiff's rights.  It was foreseeable by Defendant that Plaintiff would suffer harm as a result of the retaliation and discrimination.

6.07    Plaintiff has suffered the damages specified *supra*.

## VII.

## JURY TRIAL DEMANDED

7.01    PLAINTIFF DEMANDS A TRIAL BY JURY.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have and recover the following relief

against Defendant:

1) Judgment against Defendant for actual damages, including lost wages and benefits (both back pay and front pay), and damage to past and future earnings capacity, the sum to be determined at time of trial;

2) Compensatory damages, including mental and emotional distress, loss of enjoyment of life, and inconvenience Plaintiff has experienced and endured as a result of the discriminatory actions of Defendant;

3) Reinstatement;

4) The costs and expenses incurred by Plaintiff in seeking new employment;

5) Attorneys' fees;

6) Punitive damages;

7) Such other and further relief as Plaintiff shall be entitled to receive.


Dated:  April 15, 2021


                                  Respectfully submitted,

                                  **KILGORE & KILGORE, PLLC**

                          By: *W. D. Masterson*
                                  W.D. Masterson
                                  State Bar No. 13184000
                                  wdm@kilgorelaw.com
                                  3109 Carlisle Street
                                  Dallas, Texas 75204
                                  Telephone:  214/969-9099
                                  Telecopier: 214/953-0133
                                  **ATTORNEYS FOR THE PLAINTIFF**
                                  **LIESL D. HOOVER**